CLARENCE L. MARTIN AND MARGARET L. MARTIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martin v. Commissioner
Docket Nos. 23316-83, 31751-83.
United States Tax Court
T.C. Memo 1986-46; 1986 Tax Ct. Memo LEXIS 561; 51 T.C.M. (CCH) 403; T.C.M. (RIA) 86046; February 3, 1986. Donald E. Wharton, for the petitioners. Debra Bowe and Steven Mopsick, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1980 and 1981 in the respective amounts of $5,293 *562 and $5,013, additions to tax under section 6653(a)(1) in the respective amounts of $265 and $250.65 and an addition to tax under section 6653(a)(2) for the year 1981 to be based on an underpayment of $5,013. Respondent has also requested that the United States be awarded damages under section 6673. The issues for decision are: 1) whether petitioners are entitled to deductions for purported charitable contributions to the Universal Life Church, Inc. Charter No. 33648, Seekers of Truth and Love for the years at issue; 2) whether petitioners are liable for the additions to tax for the years at issue; and 3) whether damages should be awarded under section 6673. FINDINGS OF FACT The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in California at the time they filed their petition. During the years at issue, petitioner Clarence L. Martin ("petitioner") was a professor of psychology at American River College in Sacramento, California. His wife, who was employed as a nurse, has not been involved in any way in the alleged church activities which have led to the dispute herein. Petitioner received Charter No. 33648 from the *563 Universal Life Church, Inc. of Modesto, California on January 2, 1980. He started a congregation at his residence, 8425 Acorn Drive, Roseville, California. The congregation was called Seekers of Truth and Love ("SOTAL"). Through SOTAL, petitioner developed his ideas about religion in general and relationships between people, truth, love and many other related ideas. He published a book titled In Search Of -- A Path to Love, Truth, and Inner Peace and prepared a number of video tapes of various lectures and discussions involving his ideas and teachings. During this same period, he continued as a professor of psychology at American River College. Many of his SOTAL projects overlapped and were interrelated with what he was doing at the college. One of petitioner's theories was that religion and God were everywhere and that wherever he was, his church was there also.Much of his ministry was conducted at the college. Few meetings were held at his residence. Petitioner had a master's degree in counselling and guidance and attended two advance counselling institutes. He also was licensed by the State of California as a marriage, family and child counsellor. On their 1980 *564 income tax return, petitioners claimed a $16,917 deduction for contributions to the Universal Life Church.The deduction consisted of $15,417 in cash and $1,500 for a Lincoln Continental automobile. On their 1981 income tax return, petitioners claimed a $15,600 deduction for a cash contribution to the Universal Life Church. Respondent has disallowed both deductions. In January 1980 a bank account for SOTAL was opened in the Citizen's Bank of Roseville. Petitioner and David and Nancy Andreotti, petitioner's good friends and next door neighbors, had signatory authority on the SOTAL account. The board of directors of SOTAL was composed of these same three individuals. Petitioner was president, David was treasurer, and Nancy was secretary of SOTAL. Petitioner was the moving force behind the creation and activities of SOTAL. He signed almost all of the checks which withdrew funds from the SOTAL account and, except for nominal cash donations by third parties, was the sole support of SOTAL. The Andreottis signed checks which paid petitioner his housing allowance. Check signing was the principal activity of the Andreottis with respect to SOTAL. The funds of SOTAL were used to pay *565 a housing allowance to petitioner in the years 1980 and 1981 in the respective amounts of $8,400 and $9,400 and the expenses of petitioner's book In Search Of -- A Path to Love, Truth, and Inner Peace. Petitioner retained ownership rights to the book. He retained use of the Lincoln Continental which he had transferred to SOTAL. At various times, petitioner used the Lincoln and a 1979 650 Honda motorcycle, which SOTAL purchased, to commute to his job at American River College. All of petitioner's travel expenses were paid by SOTAL. Substantially all of the donations made by petitioner to SOTAL were used to pay him a housing allowance, transportation expenses, and cover other expenses of a personal nature. In addition to his counselling and lecturing, and general ministering to people on a day-to-day basis, petitioner performed three marriages and officiated at one funeral during the years at issue. No contributions were made by petitioner to the Universal Life Church, Inc. of Modesto, California and he has made no claim for allowance of charitable deductions based upon the tax exempt status of that organization. SOTAL does not qualify as a charitable organization, contributions *566 to which are deductible under section 170(c) during the years 1980 and 1981. OPINION Although petitioner has received Charter No. 33648 from the Universal Life Church, Inc. of Modesto, California, and operates as the Seekers of Truth and Love Chapter of that organization, he disclaims any affiliation with the Modesto organization and seeks no benefit from its tax exempt status. Petitioner testified that he was seeking to form a church, was looking for a form and structure with which to work, heard of the Universal Life Church, Inc. of Modesto, and used their forms and organizational structure merely as the easiest way to get started with his own church. He did not have legal counsel at that time, and proceeded on his own. Since then, SOTAL has operated on its own, and petitioner now seeks to be judged solely on the activities of SOTAL. Petitioner has discovered that being a chapter of the Universal Life Church does not improve his relationship with the Internal Revenue Service and he is now attempting to put as much distance between himself and the Universal Life Church as he can. Sections 170(a) and (c) allow as a deduction any charitable contribution that is made during the *567 taxable year if the organization to which the contributions are made is organized and operated exclusively for religious purposes and no part of the net earnings inures to the benefit of any private individual. Deductions are a matter of legislative grace and taxpayers must satisfy the specific requirements of the deductions they claim. . Taxpayers bear the burden of proving their entitlement to the deductions they claim. . These rules apply with equal force to deductions claimed for charitable contributions. , affd. without published opinion . Petitioner contends that SOTAL itself constitutes an entity recognizable under section 170(c) as an entity qualified to receive charitable contributions. In order to be so qualified, petitioner must establish that it was operated exclusively for religious purposes and that no part of the net earnings inured to the benefit of petitioner. With respect to the first requirement, i.e., exclusively for religious purposes, *568 petitioner points to his teachings of truth and love and his day-to-day ministry to the people with whom he comes in contact. Although the Court would not in any way quarrel with his beliefs and teachings, these activities carried on by petitioner do not constitute a church or an organization organized exclusively for religious purpose within the intent and meaning of section 170(c). SOTAL is more like an alter ago of petitioner than a church organization. See . We next get to the question of whether the earnings of SOTAL inured to the benefit of petitioner. It is clear from the record that he was substantially the only contributor to SOTAL. It is also clear from the record that the funds of SOTAL were used to pay expenses of petitioner which, with the possible exception of the book, would have been expended on his own behalf in any event. The only difference before and after SOTAL's formation is that afterwards much of petitioner's personal living and commuting expenses were paid for on an attempted tax deductible basis. Accordingly, we find that the earnings, i.e., the contributions to SOTAL, inured to *569 the benefit of petitioner. Based on the foregoing, we concluded that SOTAL was not an entity qualified under section 170(c) to receive charitable contributions. We next get to the question of sections 6653(a) additions and section 6673 damages which we will discuss together. Although petitioner has lost the basic issue here, we cannot conclude on the basis of this particular record that the deductions herein constituted negligence or intentional disregard of rules and regulations. As to damages, exercising our discretion and again on the basis of this particular record, we decline to impose same. Decisions will be entered under Rule 155.